State *v.* Barton.

THE STATE, Respondent, *vs.* BARTON, Appellant.

1. Separation of jury in a criminal case no ground for a new trial, unless they have been tampered with. (*State* v. *Whitney*, 8 Mo. Rep. 165, affirmed.)
2. On the trial of A., who had been jointly indicted with B. for grand larceny, an intercepted letter addressed by A. to a person whom he called C., warning him to make his escape, *was held* admissible against A., without any proof identifying C. with B., there being other independent evidence that A. and B. committed the larceny.

*Appeal from Pike Circuit Court.*

Barton was jointly indicted with one Burke *alias* Ringold, for grand larceny, and on a separate trial was convicted. The evidence showed that the larceny was committed at Shaw's hotel, in the city of Louisiana. Franklin S. Torrey went to bed there on the night of August 9th, 1853, having about forty dollars in money in his pantaloons pocket, and a gold watch, which he placed under his pillow. The money consisted in part of two Mexican dollars and two five franc pieces. In the

morning, the money and watch were gone. On the previous evening, Torrey had been in company with Ringold at a grocery and had "treated," and had received in change some of the money of which he was robbed. On the morning after the robbery, Torrey met Barton and informed him of it. Barton said he had been robbed too, and had no money except one dime. Torrey caused Barton to be searched, when two five franc pieces and two Mexican dollars were found in one of his shoes. On the same day, Barton delivered to the mail agent, on board of the steamboat Die Vernon, a letter addressed to " J. J. Patterson, Alton, Illinois." This letter, which is set out in the opinion of the court, was offered in evidence, and to its admission, the defendant excepted. The statements of Barton, when he delivered the letter to the mail agent, also appear in the opinion of the court. There was evidence tending to show that Ringold left Louisiana in a skiff, during the night of August 9th, and went down the river towards Alton.

The following instructions, among others, were given at the instance of the defendant :

2. Unless the jury believe from the evidence, either that Barton stole the money and property, as charged in the indictment, or that Ringold committed the larceny, and that Barton was present, aiding and abetting in its commission, they must find Barton " not guilty."

4. If the jury shall believe from the evidence, that Burke *alias* Ringold, committed the larceny, as charged, and that the prisoner knew, before Burke committed said larceny, that he intended to commit it, and that it was understood between the prisoner and Burke that, after the larceny, the money and property was to be divided between them, and that on the next day, the prisoner aided Burke to escape, still the prisoner is not guilty, unless they find also that he was present, aiding and assisting in the commission of the larceny charged in the indictment, and they must find a verdict of not guilty.

5. In weighing and considering the evidence on the part of the prosecution, if the jury can account, in a reasonable man-

State *v.* Barton.

ner, for every one or all the material facts, consistently with the innocence of the accused, it is their duty to acquit.

The following, asked by the defendant, was refused :

6. In order to connect Barton, in any manner, with Burke or Ringold, in the perpetration of the offence charged, it is necessary for the prosecution to prove that Burke or Ringold, mentioned in the indictment, is the same identical person who was concerned in the perpetration of said offence.

The jury found the defendant guilty. In support of the motion for a new trial, the defendant filed the affidavit of two of the jurors, to the effect that the jury had separated during the trial. The prosecuting attorney then filed the affidavit of the same two jurors, together with six others, that they had not conversed with any person other than themselves about the cause, during the trial. The motion for a new trial was overruled, and the defendant appealed.

*Blennerhassett & Shreve*, for appellant.

. *Clover* and *Hawkins*, for the State.

RYLAND, Judge, delivered the opinion of the court.

The defendant was indicted with one Valentine Burke, otherwise called Ringold, for grand larceny, at the September term of the Circuit Court of Pike county, A. D. 1853. The defendant was tried and found guilty. He moved for a new trial, which being overruled, he appealed to this court. The appellant relies, for a reversal, upon the acts of the court below in admitting a letter to be read to the jury; in refusing to give the sixth instruction asked for by the appellant; and because the jury separated during the trial.

1. The affidavits upon the motion for a new trial, in regard to the separation of the jury, do not make a case calling for a new trial. This point is therefore ruled for the State. *State* v. *Whitney*, 8 Mo. Rep. 165.

2. As to the admission of the letter in evidence, there is no error, in our opinion, on this point. The defendant below, appellant here, said to a witness, that he had written to a man

by the name of Patterson, in Alton, a friend of his, to look out for the thief and arrest him; he said that Patterson was a vigilant man, and he was sure he would arrest him. The witness then replied to Barton, that there were some things connected with that letter that perhaps he was not aware of; that the letter he had written to Patterson had been opened by the mail agent on board the boat, and that, instead of containing directions to arrest the thief, it gave him warning to escape; that four men were after him in a skiff, and that, if he did not look sharp, he would be arrested. Upon this he replied, "my God, this cannot be so; there must be some mistake about it. I never wrote any such letter." John O. Roberts, a witness for the State, testified, that he was chief clerk on the steamer Die Vernon, running from St. Louis to Keokuk; that he saw Dr. Barton (the defendant) on board the Die Vernon, on Wednesday evening, the 10th of August last; he took passage for St. Louis; heard him in conversation with the mail agent; he paid his fare; he handed a letter to Mr. White, the mail agent, on board the boat, saying he had written it to a friend of his in Alton, to arrest the thief; that he had stolen a coat and perhaps something else from him (Barton.) This was before he took a room, and very soon after, some citizens of Louisiana came and asked for the boat to hold on a while, until they could get a writ for Barton. He then left the boat. Witness continued: "I looked at the letter whilst the agent had it, and told him we would examine it." Here a letter was produced, which, upon examination, witness stated was the same letter which Barton handed to the mail agent, while on board the Die Vernon, which letter was read in evidence, as follows: "Four men after you; they suspicioned you ever since you have been here; you will be taken if you don't look sharp; there is a great excitement. I am going on the Die Vernon to day to St. Louis. I shall be in St. Louis to-morrow morning. Yours. Keep mum. Four followed you in a skiff. J. J. Patterson, Alton, Illinois."

The witness said, it was directed to J. J. Patterson, Alton,

Illinois, and was anonymous.    Witness did not recollect whether it was dated.    The letter was post-marked on board the boat, some time during the night, and deposited in the post office at Alton the next morning.    I got the letter from the office at Alton, a few days ago, and brought it up with me.    I marked the letter in the grand jury room by the direction of the grand jury.    The letter was properly identified.    Barton handed it to the mail agent, White ; it was opened by the mail agent ; the clerk of the steamboat knew it ; he produced the letter before the grand jury ; it was marked, and is, no doubt, the letter which Barton handed to the agent of the post-office to be mailed at Alton, to J. J. Patterson.    Barton had stated to a witness that he had written to a man named Patterson at Alton, a vigilant man, to arrest the thief.    Here was a letter which Barton handed to be left at Alton, to Patterson, and, though not signed, and though it contains no directions nor request to arrest the thief, it gives important information to his friend, Patterson, to look out ; to avoid those in search of him.    The letter was properly admitted.    The man named Ringold or Burke, in Louisiana, may be Patterson in Alton.    The letter says : "you have been suspicioned ever since you have been here." It is a fair presumption that the place was Louisiana ; and it was addressed to his friend Patterson, who had been at Louisiana, though under the name of Burke or Ringold.

The instructions given by the court for the prisoner, as well as those for the State, contain a very full and fair exposition of the law arising on the facts in proof.    Those for the defendant below are very favorable to him.    The second, fourth and fifth were calculated to prevent the jury from coming to any improper conclusions against Barton.    It seldom occurs to me to examine into a record of a criminal prosecution where the instructions more plainly point out and direct the jury under the law in regard to their verdict.    The sixth instruction is the only one which was refused, and, in our opinion, this was properly refused.    Barton was indicted as principal in the act of larceny as well as Ringold, alias Burke.    Burke was not on

trial ; Barton was, and he could be convicted by proof show- ing his participation in the act, without naming Burke. It is not perceived what injury the refusal to give the sixth instruction could have possibly occasioned the defendant ; especially after the instructions already given. In our opinion, these instructions were enough ; they plainly and fairly put the case of the defendant, Barton, before the jury, and cautiously guide them in the way to reach a proper conclusion.

If there was no other testimony against Barton than the letter written to Patterson, who may be fairly presumed to be the Ringold or Burke who was in Louisiana, there would be some necessity to connect Ringold, to whom the letter may have been written, under the address of Patterson, with the person who committed the theft. But really we cannot see the propriety of this instruction, upon the case as made out. A witness proves that, about ten or eleven o'clock, at night, the night of the theft, Barton came to the bed where Ringold was asleep, and waked him up. He got up and they held a conversation, in a low tone, not understood by witness, then started out of the room and stopped a while. Ringold was gone some ten minutes and came back. Barton did not come back. Barton denies having any money ; he is searched, and four dollars, or rather two dollars and two five franc pieces found in his shoe. The person whose money was stolen swears he received that night, in change, two dollars and two five franc pieces. Why should an honest man carry four pieces of silver between the sole of his foot and his sock, in the village where he is residing ?

Upon the whole case, this court is of opinion, that there is no error in the court below, and its judgment must be affirmed, Judge Scott agreeing. Judge Gamble not sitting.