D. NELSON AND ANOTHER v. THE STATE.

1—Notwithstanding that no judgment had been entered in the court below on a verdict of guilty in a prosecution for murder, this court, in view of Article 3151, Paschal's Digest, proceeds to dispose of the case on appeal.

2—A new trial will not be granted on account of a momentary separation of a juror from his fellows, when it is not shown that he held any conversation with other persons, and there was nothing to show that he was tampered with in any way.

3—The conviction in this case *held* to be well sustained by the evidence, and a new trial to have been properly refused.

APPEAL from Falls. Tried below before the Hon. A. J. Evans.

Dennis Nelson and Joseph Young, the appellants, were jointly indicted at the Spring term, 1869, of the District Court for Falls county, for the murder of Franklin Wallace—Nelson being charged with the actual perpetration of the act, and Young as an aider and abettor.

They were tried at the same term, the jury finding Nelson guilty of murder in the first degree, and Young of murder in the second, and assessing the punishment of the latter at ten years' imprisonment in the penitentiary.

Mrs. Jane Wallace, wife of the deceased, was the principal witness for the State. She stated that on the 18th of February, 1869, she and her husband came to Marlin, in Falls county, in a two-horse wagon, bringing with them some articles of country produce they had engaged to deliver in Marlin. That after disposing of their produce they started to return to their home, a few miles in the country. That witness drove the wagon, in consequence of a wound in the arm which the

deceased had received, some two weeks previous, at the hands of Dennis Nelson, one of the accused. When witness and her husband got opposite to Mr. Cox's house they turned off the main road and drove up to Cox's house and got a barrel of flour, which was there belonging to them. They then started on home, and on reaching the main road leading to their house witness saw the accused, Nelson and Young, just in front of the wagon, Nelson being armed with a double-barreled gun and a six-shooter, and Young with a six-shooter. Nelson spoke and said, "Wallace, I have come to kill you." Wallace said, "What are you going to kill me for? Do not do it. Go home, Nelson, and let me alone, for I am wounded and sick." Nelson and Young both dismounted from their mules, Nelson still saying he intended to kill Wallace. Wallace asked, "What for?" and Nelson said, "You have threatened my life." Wallace replied, "I never did threaten your life, and you can not find the man who will say so. I did not, and I will go with you to town or any where else and show you I did not." All this time Nelson was attempting to shoot Wallace, and witness was keeping her body between Wallace and the muzzle of Nelson's gun. Witness begged Nelson not to shoot Mr. Wallace, and to go home, and told him she would get down on her knees and pray to him if he would spare her husband. But he said he intended to kill him ; G—d d—n him, he intended to have him. Young had his six-shooter out, and Nelson called upon him and said, "Young, are you not going to do anything?" Then Young presented his six-shooter at Wallace's head, as though he was going to shoot him in the head. Witness was all the time protecting Wallace by keeping between him and danger. Witness told Wallace to fall down in the wagon. He did so, and witness covered him with her shawl. Nelson came up on the other side of the wagon from Young, and pushed his gun against the back of Mr. Wallace and discharged both barrels, the wound being made on the right side of the back bone. Mr. Wallace died instantly and without speaking. The horses took fright from the report of the gun and ran off. Nel-

son and Young mounted, and Nelson ran up to the side of the wagon and fired off his pistol twice, either at witness or at the dead body of Wallace.

By other witnesses much of Mrs. Wallace's testimony was corroborated. It was in evidence that Wallace and Nelson had recently had four personal difficulties, and both were in arrest for the last one, in which Nelson had wounded Wallace in the arm. Having no jail, the sheriff had appointed two persons as a " guard " over Wallace, and had placed Young and another person in the same capacity over Nelson—which explains the allusions in the opinion to the position and duties of Young.

The defense proved that in the four previous difficulties Wallace was the aggressor, and that guns, pistols and knives were used in them. That about a month before the killing, Wallace stated that he would kill Nelson before six months. That after these difficulties Nelson was in constant fear of Wallace, and would shut his door and avoid the windows at night. That Wallace's general character was that of a violent, quarrelsome and dangerous man. One witness testified that in January, 1869, he heard Wallace say he would kill Dennis Nelson ; that no such man should live in the range where he did; that he had to come to this country for killing d—d rascals.

In support of defendants' motion for a new trial, the affidavits of three or four persons were filed to the effect that two or three of the jury, after being empanneled, were seen apart from their fellows, and that the trial was the subject of conversation in every crowd, with great prejudice prevailing against the accused ; but there was no allegation that any conversation or intercourse had taken place between any of the jurymen and bystanders.

Their motion being overruled, the defendants appealed. No judgment or sentence appears in the transcript.

No briefs on either side.

LINDSAY, J.—There is no judgment appearing in the transcript of the record in this case. Nor does it appear from the

record, why the judgment was not entered upon the return of the verdict of the jury, after allowing the time prescribed by law for a motion in arrest of judgment, and a motion for a new trial. But, as by Article 3151 of the Criminal Code, Paschal's Digest, the judgment of the court may be entered at the succeeding term, if it has not been entered, this court, as it seems, may proceed to dispose of the case upon the appeal, as it now appears in the transcript of the record.

The court thinks there is no error in the charge of the court. Nor is it shown there was any such tampering with the jury (as was attempted to be shown by the affidavits) as to vitiate the verdict. For aught that really appears, the prisoners had a fair and impartial trial.

In examining the evidence, the court cannot but regard this homicide as a most inexcusable murder, deserving the extreme penalty of the law, not only to the actual slayer of Franklin Wallace, but of his compeer in guilt. From the facts stated, this "guard" of the slayer was as deeply implicated in the transaction as the actual slayer, and his conduct was greatly aggravated from his position towards the parties at the time, as the "guard" of the slayer, and so appointed to act for the express purpose of preventing this tragical occurrence.

The court is of opinion no injustice has been done to the prisoners by the verdict of the jury. The judgment of the court, therefore, overruling the motion of the prisoners for a new trial, is affirmed.

                                             Affirmed.