## WILLIAM EARLY *v.* THE STATE.

1. CHANGE OF VENUE.—The Constitution of 1869, Article 5, section 11, directed that, on a change of venue because of disqualification of the judge, the case should be transferred for trial to that county in an adjoining district whose county site was nearest to that of the county in which the cause was pending. This provision was mandatory, and required the cause to be sent out of the district, notwithstanding there was within it a criminal district court not liable to objection.

2. SAME.—See the opinion in this case for irregularities in the transfer of this cause, on a change of venue, from a district court to a criminal district court of a city in an adjoining district; notwithstanding which irregularity it is *held* that the latter court properly took and exercised jurisdiction.

3. ARRAIGNMENT.—In a trial for a capital felony the Code of Criminal Procedure, as well as the common law, requires that the accused be arraigned and that he plead to the indictment; or, if he stands mute or refuses to plead, that the plea of not guilty be entered for him; and if the transcript sent up to this court fails to show an arraignment or plea, the conviction will be set aside. The introduction of witnesses by the defendant, argument to the jury in his behalf, or like participation by him in the trial, will not cure the want of a plea.

4. SAME.—When there has been neither an arraignment nor plea in a capital case, a verdict of guilty is a nullity, and no valid judgment can be rendered on it.

5. DISCHARGE OF JURY.—Under the Code of Criminal Procedure, after a felony case has been submitted to a jury, the court trying the cause has no discretionary authority to discharge the jury before verdict, unless the jury have failed to agree and it is altogether improbable that they can agree.

6. SEPARATION OF JURY.—An unauthorized separation of a jury in a criminal cause has generally been considered a species of "misconduct"

within the meaning of section 672 of the Code of Criminal Procedure (Pasc. Dig., Art. 3137), and the practice has to some extent been adopted of permitting the testimony of the jurors to be taken in determining whether a separation had existed, and, if so, the extent of it.

7. SAME.—Pending a protracted trial of a capital felony the jury were lodged each night in a hotel, which was consumed by fire during the third night of the trial. Escaping from the burning building, the jurors became separated for an hour or more, some of them mingling with a crowd engaged in subduing the fire, and others resorting to their homes. On examination by the court each juror swore that during the separation of the jury no person had spoken to him, or in his presence, on the subject of the trial. Accused made no objection to the trial being proceeded with, but refused to consent thereto, or to waive any right or advantage which might be the legal result of the separation of the jury; and after his conviction he assigned the separation as a cause for a new trial. *Held* that, notwithstanding the inevitable nature of the separation of the jury, and the depositions of the jurors in regard thereto, it entitled the accused to a new trial.

8. SAME.—The cases in which a separation of a jury has been held not to entitle the accused to a new trial were not cases of the dispersion of the entire jury for a considerable time, as in the present case, but where only one or more individual members of the jury separated from the panel, under circumstances which, independent of their own evidence, repelled the supposition that they could have been tampered with.

APPEAL from the Criminal District Court of the city of McKinney. Tried below before the Hon. SILAS HARE.

The bill of indictment was found by the grand jury of Cooke county on the 23d of August, 1873, and charged that William Early did, on the 24th of February, 1873, kill and murder Charles M. Winters, in the county of Cooke, of his malice aforethought, etc. The indictment contained three counts, the first of which charged that the homicide was committed with a pistol, the second that it was committed with a large hackberry stick, and the third that a stone or rock was the fatal instrument employed by the accused.

The opinion of this court discloses the reason and means by which the cause was transferred from Cooke county. The trial from which this appeal is taken was had in July,

1875, and the evidence adduced is elaborate and full of minute details and circumstances relied upon by the prosecution to identify the deceased and to connect the accused with his murder.

On the 5th of March, 1873, the body of a man, apparently from twenty-five to thirty years old, was found in a small pool of water on Indian creek, and about three miles from a village or settlement called Valley View, in Cooke county. A gun or pistol shot had penetrated the back, and the front part of the head was crushed. A large hackberry stick, and a stone weighing six or eight pounds, both with blood on them, were found near by. There were signs of a struggle, and the ground bore indications that the deceased had been dragged a short distance from where the struggle took place to the pool in which he was found. From the condition of the body, and other circumstances, several witnesses inferred that the homicide had occurred from ten to thirteen days prior to the discovery. The trail of a wagon and tracks of a two-horse team were apparent on the ground.

Newell Packard, a witness for the state, testified that late in January, 1873, he, together with Charles Winters, the accused, and the latter's wife and children, left their homes in the state of Iowa to come to Texas, bringing with them a two-horse wagon and a team which belonged to the accused. In February they arrived at Sherman, in Grayson county, and stopped some eight miles southwest of that place; from which stopping-place Winters and the accused, on the 26th or 27th of February, started in the two-horse wagon, the accused taking a rifle with him, and Winters a small pistol with brass cartridges. About a week previous they had more than once spoken of making a trip to Valley View, and west of there, to look at the country. Two days and a half after starting to look at the country the accused came back alone. He said he had left Winters with two Pennsylvanians who were going west. Witness described

the clothing worn off by Winters, and, being shown that taken from the body found in the pool, identifies them as the same.

The departure of Winters with the accused, thus sworn to by Packard, was the last known of the former, so far as the evidence disclosed. The mother and a brother of Charles M. Winters identified some of the clothing taken from the corpse found in the pool as articles which belonged to him in Iowa, and taken from there by him when he started to Texas. One of them proved that Charles M. Winters was ruptured and wore a truss, and a truss was found on the body taken from the pool. In short, the evidence to identify the deceased as Charles M. Winters, though altogether circumstantial, appears to be complete and satisfactory.

The most controverted questions on the trial below arose upon the evidence adduced by the prosecution to prove that the accused was the perpetrator of the crime. Even the evidence for the state proved that he and the deceased were intimates and friends of long standing before coming to Texas; that their families were on the same footing of friendship; that for several years before coming to Texas the accused had been connected with the father of the deceased, and for a year or so with the deceased himself, in the cattle business in Iowa; that on the trip to Texas the deceased accompanied the party on the footing of a member of the family of the accused; and it does not appear that at any time there had been the slightest breach of friendship between them. The pockets of the pants found on the deceased were turned inside out, and but two or three dollars were discovered on his person; from which, and from the effort of the prosecution to prove that he started from Iowa with several thousand dollars in currency, it is apparent that robbery was the motive which the prosecution imputed to the perpetrator of the crime. But there was no evidence showing that the accused was in possession of any considerable amount of money subsequent to the finding of

the body, and he remained in the same section of country, carrying on a house of entertainment, until, in the latter part of July, 1873, he and Packard were together arrested under an accusation against them for the murder of Winters. Packard was subsequently released.

In view of the rulings made on this appeal there is no occasion to attempt a detail of the circumstances proved by the prosecution for the purpose of fixing upon the appellant the perpetration of the crime. It may suffice to say that the most material of them consisted of the disposition by him of a watch which had belonged to the accused, and of certain letters written by him, previous to his arrest and after the homicide, to relatives of the deceased in Iowa, in which he stated that he had just heard from the deceased at San Antonio, together with other statements not verified at the trial, and apparently at variance with the case made by the prosecution.

It will be understood that no attempt is made to give in this statement anything more than a general outline of the most prominent facts of the case, with no pretense of adequately recapitulating, or even summing up, the very numerous details embodied in the record of the trial below.

The facts relative to the separation of the jury are fully condensed in the opinion of the court.

The jury found the accused guilty of murder in the first degree, and assessed his punishment at confinement in the penitentiary for life. His motion for a new trial being overruled, he appealed to the supreme court, from which, on the organization of the court of appeals, under the Constitution of 1876, it was transferred to the latter tribunal.

*Walton, Green & Hill*, for the appellant.

1st. If the indictment was ever legally presented by a legal grand jury, then it was presented in the district court of Cooke county, and by the grand jury of Cooke county.

2d. Thereby said district court obtained jurisdiction of

the case, and it was triable in that court and county unless the venue thereof was legally changed to another.

3d. An effort was made to change the venue—whether legally completed is a question for the court.

The case was tried by the McKinney criminal court. Could the trial, under all the facts and circumstances of the case, be legally had in the county of Collin?

1st. The indictment was presented, and the case was triable, in Cooke county.

2d. For sufficient reasons the venue of the case was changed to Collin county, 4th March, 1874.

3d. The reason for the change of venue was incompetency of the judge to try.

4th. After the transmission of the proper papers to Collin county, docketing the case for trial in the district court, and after the defendant (appellant) had made his application for attachment for witnesses, and been refused on the ground that the court had no jurisdiction, the appellant moved the court to strike the case from the docket. This motion was granted, and an order entered requiring all the papers, etc., to be retransmitted to Cooke county.

5th. Thereupon the appellant sued out writ of *habeas corpus* before the judge of the criminal court on the ground of his illegal restraint.

6th. The writ was heard, after proper return by the sheriff who held custody, and while all the foregoing matters were in evidence; whereupon the court refused to discharge the prisoner, but, on the contrary, ordered that the case should be placed on the criminal court docket, and process issued preparatory to a final trial.

7th. These several matters being facts, the appellant interposed his plea to the jurisdiction of the criminal court of McKinney, Collin county, denying the right of the court to lawfully try him. Not only are said matters embraced in said plea, but other affirmative substantive matters are

·embraced which were needful to a clear and exact comprehension of the question raised. The plea is a sworn plea.

8th. Among the other matters of affirmative substance, above referred to, are : (*a*) The distances between Gainesville, in Cooke county, to McKinney, in Collin, and Sherman, in Grayson county. (*b*) The existence of that fact when the change of venue was ordered, and its continuance when the plea was filed.

9th. The plea to the jurisdiction was overruled.

We remark :

1st. At the time of the change of venue, March 4, 1874, the criminal courts for Dallas, Sherman, and McKinney were in operation. Acts 1873, pp. 210–212.

2d. Said criminal courts had original and exclusive jurisdiction in all felony cases. Ib. p. 11, sec. 1.

3d. The change of venue from Cooke to the Collin county district court was unlawful, because said court had no jurisdiction to receive the case. All jurisdiction had been taken from it and conferred on another court. Ib.

4th. But suppose that the district court of Collin county had had jurisdiction to receive the case, it certainly did not have jurisdiction to try ; it could, at most, only have received it as a guest, to help it on its journey to the criminal court. Ib. sec. 6. It did not do that, but ejected it from the house, and ordered it back to from where it started. The criminal court, acting the part of the good Samaritan, picked the wanderer up. This may be admirable in morals, but the law will hardly approbate such act, particularly when the questionable hospitality results in depriving a citizen of his liberty for life.

5th. Even if the change of venue had been to the criminal court of McKinney, Collin county, the order would have been unlawful, and the jurisdiction denied when the facts were called to the attention of the court by proper plea. Why? (*a*) Because the criminal court of Sherman City,

Grayson county, was nearer the county from which the venue was changed than was Collin county. (*b*) Because the court-house of Grayson county was nearer to Gainesville, the county seat of Cooke county, from where the venue was changed, than was the court house of Collin county. Pasc. Dig., 521, Art. 2998.

6th. Then the change of venue should have been to Sherman criminal court, and not to that of McKinney.

7th. The same judge presided in the three criminal courts, and was not disqualified, for he tried the case. The judge could as legally preside at Sherman as McKinney. It was the lawful right of the appellant to be tried at Sherman, under the law and the facts. He was deprived of this right. The right was material. Every man, when tried, has the right to be tried legally—by the forms of law, and in a court having jurisdiction of the subject-matter and of the person, lawfully acquired.

But, further:

1st. Could a change of venue be had in this case at all ?

2d. To change venue is a statutory right, and only statutory.

3d. The law for change of venue was passed under, and applied to, an existing state of facts, viz., from district court to district court, when there were no criminal courts.

4th. Can statutory law adapt itself to developing facts—elongating or curtailing itself as occasion may require, or as additional facts are called into existence by the passage of new, or the modification of old, statutory laws? We confess such malleability in the law would be very convenient, but it would hardly be right, in view of the long-established and never-denied construction of statutes, where new jurisdictions are created. In such case it is necessary that either new statutes of regulations and power should be passed, or else old ones directly applied to the new order of things.

Upon a candid consideration of the whole question of
jurisdiction, from a legal as well as a common-sense point of
view, we are clear in opinion that there was no jurisdiction
in the court which tried the appellant.

*A. J. Peeler*, Assistant Attorney General, for the State.

1st. The indictment was presented by a grand jury in the
proper court. *Hudson* v. *The State*, 40 Texas, 12.

2d. The venue was changed on application of appellant.
No objection to the indictment was made before such change.
*Caldwell* v. *The State*, 41 Texas, 86.

3d. As to jurisdiction: Two continuances had been granted
to appellant in Cooke county before the venue was changed.
The venue was changed, on account of the incompetency of
the court, to the county of Collin, "that being the nearest
county site free from above objections." No objection was
made by appellant to the change of venue to Collin county.
The twelfth district, of which Judge Lindsay was judge,
was composed, at the time the change of venue was made, of
the counties of Grayson, Cooke, Montague, Clay, Wise, and
Denton. Act of Feb. 10, 1874; Pamphlet Laws, 7. The
judge, being incompetent, would not, of course, transfer the
cause to one of his own courts, but to the nearest county
where a competent judge presided. This was done, as will
be seen by an inspection of the map. The venue having
been properly changed, the only question is as to the
jurisdiction of the criminal district court for the city of
McKinney. The act establishing the criminal district court
for the cities of Dallas, McKinney, and Sherman (2 Pasc.
Dig., Art. 6172, 4th ed. p. 1253) was in force when the
venue was changed, and said court acquired and had juris-
diction of the case when it was tried. The case, as will
be seen by the order, was transferred to Collin county, and
not to the district court of that county. The transfer was
in strict conformity to law. 1 Pasc. Dig., Art. 2995.

Being transferred to the proper county, by operation of law, it came within the jurisdiction of the criminal district court of McKinney. The district judge, on the application of the appellant, dismissed the case and ordered the clerk to return the papers to Cooke county. This order was without force; for, if he would not take jurisdiction, the case belonged to the city criminal court, and he had no authority to deprive it of this jurisdiction under the law. The order of Judge Hare ( Trans. 17, 18) was entirely proper; indeed, to have failed or refused to make such an order would have been a disregard of a high duty in the administration of justice. The case of *March* v. *The State*, 44 Texas, 64, may be regarded as conclusive upon the question of jurisdiction.

The record furnishes throughout abundant evidence of the identity of the accused. In the absence of bill of exceptions, saving the point where the record does not show that the proper plea was entered either by defendant or by the court on his behalf, the presumption must prevail that all things will be presumed to be regularly done; and, besides, the proceedings as shown by the record plainly show that the defendant was present, and that the trial proceeded under the plea of not guilty.

5th. Separation of jury. When the fact is not shown that the jury were tampered with, and that the defendant, by reason of such tampering, did not have a fair and impartial trial, the verdict will not be disturbed. *Nelson* v. *The State*, 32 Texas, 71. Unless it is positively shown that there was reason to suppose wrong or injustice might have resulted from it to the appellant on account of the separation of the jury, the verdict will not be disturbed. *Jenkins* v. *The State*, 41 Texas, 132.

It must appear that such separation had an effect on the fairness of the trial. *Wakefield* v. *The State*, 41 Texas, 556.

The jury were hardly expected to remain in the hotel

while it was burning, and their separation, under the circumstances, was, if not absolutely unavoidable, at least excusable, and the conduct of the district attorney and the court in reference thereto was in the highest degree prudent and commendable. The defendant was treated with all fairness, and given every opportunity to object to the jury rendering a verdict. Having taken the chances of an acquittal, he ought not, under the circumstances, and without showing that he has been prejudiced, be now heard to insist on a reversal on this ground.

WHITE, J.   On the 20th day of August, 1873, an indictment was filed in the district court of Cooke county, Texas, charging the appellant, William Early, with having, on the 24th day of February, 1873, in Cooke county, murdered one Charles M. Winters.   When this indictment was presented and filed, the Hon. C. C. Binkley was judge of the district court of Cooke county.   The case was continued at the two terms subsequent to its filing, on the application of the defendant.   At the March term, 1874, the Hon. J. M. Lindsay had become judge of the twelfth judicial district, composed of the counties of Grayson, Cooke, Montague, Wise, and Denton (see Acts of 1864, p. 7), and was presiding over and holding a regular term of his court in Cooke county.   Prior to the time of his elevation to the bench he had been employed by the defendant, Early, as his counsel in this case.

On the 4th of March the defendant filed his motion for a change of venue in the case, owing to the disqualification and incompetency of the said judge to try the same.   The order changing the venue was made, and the portion of it which is material to this case is in the following language :

" It is, therefore, ordered by the court that the change of venue be allowed, and that the venue in this cause be changed to the county of Collin, that being the nearest

county site free from objection; and that the clerk of this court transmit to the clerk of the district court of Collin county the original papers in this cause, and a transcript of all the proceedings had therein.''

It is, perhaps, necessary and proper, in order to arrive at a correct understanding and appreciation of the grounds of the plea to the jurisdiction of the court afterwards filed, that we should here state that, before this order changing the venue of the case was made by Judge Lindsay, an act had been passed by the legislature, entitled '' An act to establish, organize, and define the powers of the criminal district courts in and for the cities of Dallas, McKinney, and Sherman'' (Acts of thirteenth legislature, pp. 210–212, Pasc. Dig., Art. 6172), the city of McKinney being the county site of Collin county, and Sherman the county site of Grayson county.

It does not appear to be disputed, and the evidence establishes the fact, that Sherman, the county site of Grayson county, is nearer to Gainesville, the county site of Cooke county, than the city of McKinney, in Collin county, was and is to Gainesville, the county site of Cooke county.

This act of the thirteenth legislature was passed in pursuance of the power conferred upon the legislature by the 1st section of Article 5 of the Constitution of 1869; and, in conformity with this section of the Constitution, the 1st section of the act provided that the courts established in each of the counties mentioned should be courts '' of original and exclusive jurisdiction in all cases of felony, and concurrent jurisdiction in all cases of misdemeanor, co-extensive with the limits of the county wherein said cities are situated.'' The 8th section of the act provided that '' the clerks of the district courts, and the sheriffs of the counties wherein said cities are situated, and the district attorneys in whose districts said cities are situated, shall be the clerk, sheriff, and district attorney of said court, under the same rules and

regulations as now are prescribed by law for their official acts in the district courts of the state."

It appears that when the record and transcript in this case were, in pursuance of the order changing the venue, transmitted by the district clerk of Cooke county to the district clerk of Collin county, the latter, after receiving the same, filed it and entered the case on the docket of the district court of Collin county, instead of upon the docket of the criminal district court of McKinney city, of which court, as we have seen, he was also the clerk.

At the first term of the district court of Collin county after the cause was filed in and placed upon its docket, the defendant, Early, applied to the district judge for process for his witnesses, and his application was refused upon the ground that the said court had no jurisdiction in the case. At the next term defendant moved the court to strike the papers from the file of the court, because the court refused to assume jurisdiction of the cause. This motion was sustained, and a further order made by the district court of Collin county at the time in these words : " That the clerk of this court is ordered to transmit the original papers in this cause, together with certified copies of all orders in this cause made here, to the clerk of the district court of Cooke county, Texas." This order was made on the 20th of August, 1874. In the month of December following, the defendant applied for, and obtained, a writ of *habeas corpus* from the Hon. Silas Hare, judge of the criminal district courts for the cities of Dallas, McKinney, and Sherman, and the writ coming on to be heard by the last-named judge, in chambers, at the city of McKinney, he disposed of the same by remanding the applicant " to the custody of the sheriff of Collin county, to be safely kept so that he may be brought before the criminal district court for the city of McKinney, in Collin county, on the first Monday in February, 1875 ; and it is further ordered that the clerk

of said court enter this cause upon the docket of said court, and issue all necessary process, preparatory to the trial of said cause, that may be demanded by the state or the defendant.''

When the next term of the criminal district court of McKinney city was in session, the defendant, Early, filed a plea to the jurisdiction of the court, alleging that, for the reasons above stated, the cause was improperly and without legal authority upon the docket of said court; that the first error committed was the order of Judge Lindsay in changing the venue in this case, the error being that the case should have been sent to Sherman, in Grayson county, because that city, and not McKinney, was the nearest county site to Cooke county; and that, if it had been properly sent to Collin county, then it was filed in the district court; and that, after it was dismissed and ordered back to Cooke county, it could not be legally placed on the files and docket of the criminal district court of McKinney city. The district attorney filed a demurrer and exceptions to this plea, which, being heard, were sustained by the court.

At the June term, 1875, of the criminal district court of McKinney city, the case was called and tried, and the defendant was found guilty of murder in the first degree by the verdict of the jury, and his punishment assessed at imprisonment to hard labor for life in the penitentiary.

The defendant made a motion for a new trial, the principal grounds of which may be summed up in the following, viz. :

1st. The action of the court upon defendant's plea to the jurisdiction.

2d. The separation of the jury after they were impaneled, during the progress of the case, and the action of the court with reference thereto.

This motion for a new trial was overruled, and defendant

saved his exception to the ruling of the court and gave notice of appeal.

We find in the record several other bills of exceptions saved by the defendant 'during the trial, which were not insisted upon on the motion for a new trial, but which, nevertheless, if material, it is our duty to pass upon. *Bishop* v. *The State*, 43 Texas, 390. Still, we do not feel called upon, under the rule of practice settled by the authority just cited, to discuss and comment *seriatim* upon all the grounds of error complained of; our duty seems only to require that we should notice those errors respecting which, in our judgment, there may be some question, or some contrariety of opinion as to the propriety and correctness of the ruling. In regard to the others we will simply state that the supposed grounds for error which are not noticed and commented upon may be considered as not well taken; and, consequently, as to them the rulings of the court are sustained.

1st. As to the sufficiency of the indictment: It is contended that the indictment is insufficient in that it fails in two important essentials required by the statute, 2d and 3d subdivisions of Article 2863, Paschal's Digest—subdivision 2d providing that "it must appear therefrom that the same was presented in a court having jurisdiction of the offense set forth," and subdivision 3d, that "it must appear to be the act of a grand jury of the proper county."

We copy from the record so much of the proceedings of the lower court as have bearing upon this matter, in the following words:

"*The state of Texas, county of Cooke. In the district court of Cooke county, Texas; August term, A. D. 1873:*

"Be it remembered that, on the 18th day of August, 1873, a regular term of the district court, within and for the

county of Cooke, was begun and held at the court-house in the town of Gainesville; present, and presiding, the Hon. C. C. Binkley, judge, J. M. Hobbs, sheriff, and F. S. Cleaves, clerk; when and where the following proceedings were had, to wit:

"*The State of Texas* v. *William Early. August 20, 1873.*

"Now at this time come the grand jury of Cooke into open court, and, through their foreman, W. C. Lillard, presented the following bill of *judgment,* viz.: No. 563. The State of Texas *v.* Wm. Early, murder." (We are satisfied, and will presume the fact to be, that the word "judgment," as above written, is a clerical error in copying the entry from the minutes, and that the word should have been "indictment.")

Next in regular order of pleadings comes the indictment; and here we make the following extract from the transcript:

"*The State of Texas, plaintiff,* v. *William Early, defendant. No. 563.*

"In the name and by the authority of the state of Texas: The grand jurors of the state of Texas, duly elected, charged, and sworn to inquire into and true presentment make of all offenses committed in the body of the county of Cooke, upon their oaths present, in the district court for said county, that Wm. Early, late of said county, on the twenty-fourth day of February, A. D. 1873, with force and arms, in the county of Cooke and state aforesaid," etc.

Considering these proceedings in connection with the objection raised by the defendant to the sufficiency of the indictment, we feel warranted in holding the indictment good, and not obnoxious to the 2d and 3d subdivisions of Article 2873, Paschal's Digest; and we are sustained in thus holding by the rulings of our supreme court in *Bosshard* v. *The State,* 25 Texas (Supp.), 207; *Williams* v. *The State,* 30 Texas, 404; *Golden* v. *The State,* 32

Texas, 737 ; and we refer especially to the case of *Hudson* v. *The State*, 40 Texas, 12.

2d. The jurisdiction of the criminal district court of McKinney city to try the case on the change of venue : We have seen that the venue was changed by Judge Lindsay from Cooke to Collin county because of his disqualification to try, he having been of counsel for the defendant before his elevation to the bench. His action was predicated on the authority of section 11 of Article 5 of the Constitution of 1869, which is in these words : " When a judge of the district court is thus disqualified, the parties may, by consent, appoint a proper person to try the case, and, upon their failing to do so, the case shall be transferred for trial to the county in the adjoining district whose county seat is nearest to that of the county where the case is pending."

This language, we take it, is not merely directory, but mandatory ; and, according to our construction of its meaning, though the county site of Grayson county was nearer to Cooke than that of Collin, and though it has a criminal district court competent to try the case if properly brought before it, still, that county being in the same judicial district with Cooke, there was no discretion left the judge, but it was his duty to follow the plain rule of the Constitution, and send it to the nearest county site in the adjoining district.

Counsel for the appellant seem to labor under the impression that the rule of procedure which should have governed and regulated the action of the court in the premises is the one prescribed in Article 2998, which provides that, "upon the grant of a change of venue, the criminal cause shall be removed to some adjoining county, the court-house of which is nearest to the court-house of the county where the prosecution is pending, unless it be made to appear in the application that such nearest county is subject to some

objection sufficient to authorize a change of venue in the first instance." This rule, however, is not applicable in cases where the change of venue is effected on account of the recusation of the judge for disqualification, but was intended to operate in all other cases where the change of venue was taken for the causes and in the manner indicated in Article 2994, Paschal's Digest; and we are fully borne out, in this view of the construction placed upon the applicability of Article 2998, by Article 2995, which was the rule in cases of disqualification of judges up to the adoption of the Constitution of 1869, and, had the latter rule been in force, the judge would necessarily have sent the case to "the nearest county out of his district, and free from the like objection."

Judge Lindsay was, then, clearly right in ordering the venue changed to Collin county, and he was unquestionably right in ordering the papers in the case transmitted to the district clerk of Collin county, who, as we have heretofore seen, was both clerk of the district court of Collin county and clerk of the criminal district court of the city of McKinney, in Collin county. Coming into his possession, as the record did, it was clearly the duty of the district clerk to file the papers in, and docket the cause upon the docket of, the criminal district court of the city of McKinney; for, with the statute creating that court, of which he was one of the officers, before him, in plain and unambiguous terms conferring upon that court original and exclusive jurisdiction, in all cases of felony, co-extensive with the limits of Collin county, it does appear as if he should have known that the case should not have been filed in the district court, that court having been deprived by the same act, as a necessary consequence, of all jurisdiction. Had this been done, we apprehend this question would not have been presented, as it has been, to the jurisdiction of the court. Instead of doing this, the district clerk, as we have

seen, filed and docketed the cause in the district court, and must have done so of his own motion, for he had no order to that effect from any authority, so far as appears.

From the above statement and reasons it must be apparent that the *status* of the case was about this : It was legally in Collin county, but was wrongfully on the docket of the district court, having been placed there by a ministerial officer acting under no authority. The judge of the district court recognized his want of jurisdiction, refused to issue process in the case, and, upon defendant's motion to dismiss, not only dismissed the case, but assumed authority to order the case to be returned to Cooke county. This order, we think, he had no authority to make, and it was of as little binding force and efficacy as the act of the clerk was in conferring jurisdiction by placing it upon the docket. Both acts were simply null and void, and the case, when heard by Judge Hare upon *habeas corpus*, was already, by virtue and operation of law, within the jurisdiction of the criminal district court of McKinney city—the act of filing and docketing the case in that court alone remaining to be done. This act Judge Hare ordered to be done, and, with the law and facts as we have stated them above, we cannot well see how he could have done otherwise. These views of this branch of the case, we think, will be found to be sustained by a reference to the decision of our supreme court at the Tyler term, 1875, in the case of *S. W. March* v. *The State*, wherein the powers, authority, and jurisdiction of criminal district courts of cities, established by law in accordance with the 1st section of Article 5 of the Constitution of 1869, are ably discussed, considered, and adjudicated. *March* v. *The State*, 44 Texas, 64.

3d. Another question presented by counsel in their brief for appellant, and one which was not presented directly on the trial in the lower court, is that the record nowhere discloses the fact that defendant was ever arraigned or called upon to

plead, or that he did plead to the indictment.    The neces-
sity for arraignment and plea, and especially for a plea,
before a party charged with a capital felony can be tried, is
a direct command and positive requirement of our statute.
We read the following Articles bearing upon the subject :

"There shall be no arraignment of a defendant except.
upon an indictment for a capital felony."    Pasc. Dig., Art.
2933.

"An arraignment takes place for the purpose of reading
to the defendant the indictment against him, and hearing
his answer thereto."    Pasc. Dig., Art. 2934.

"No arraignment shall take place till the expiration of at
least two entire days after the day on which a copy of the
indictment was served on the defendant, unless the right to
such copy or to such delay be waived, or the defendant was
on bail."    Pasc. Dig., Art. 2935.

"When the defendant is brought into court for the pur-
pose of being arraigned, if it appear that he has no counsel,
and is too poor to employ counsel, the court shall appoint
one or more practicing attorneys to defend him, and the
counsel so appointed shall have at least one day to prepare
for trial."    Art. 2936.

"When the defendant is arraigned, his name, as stated
in the indictment, shall be distinctly called, and unless he
suggest, by himself or counsel, that he is not indicted by
his true name, it shall be taken that his name is truly set
forth, and he shall not thereafter be allowed to deny the
same by way of defense."    Art. 2937.

Article 2941 reads as follows :  "The name of the accused.
having been called,    *   *   *   *   *the indictment shall be read,.
and the defendant be asked whether he is guilty or not.*"

"If the defendant answer that he is not guilty, the same
shall be entered upon the minutes of the court ; if he refuses.
to answer, the plea of not guilty shall in like manner be.
entered."    Art. 2942.

From the words of the statute above quoted, and especially those we have taken the liberty to italicize, it would seem evident that our law-givers intended to establish, not merely a formal rule of practice and procedure in capital cases, but also intended to make its observance one of the prerequisites to the validity of a trial in all such cases. Had no such rule been expressly provided, still we conceive that this practice would have been none the less obligatory under Article 2493 of our Code of Criminal Procedure, which enacts that "whenever it is found that this Code fails to provide a rule of procedure in any particular state of case which may arise, and is therefore defective, the rules of the common law shall be applied and govern."

In his Commentaries on the Common Law, the practice is thus lucidly stated by Sir William Blackstone: "When the offender either appears voluntarily to an indictment, or was before in custody, or is brought in upon criminal process, he is to be immediately *arraigned* thereon. * * * To arraign is nothing else but to call the prisoner to the bar of the court to answer the matter charged upon him in the indictment. * * * When he is brought to the bar, he is called upon by name to hold up his hand, which, though it may seem a trifling circumstance, yet is of this importance, that, by holding up his hand, *constat de persona*, and he owns himself to be of that name by which he is called. However, it is not an indispensable ceremony, for, being calculated merely for the purpose of identifying the person, any other acknowledgment will answer the purpose as well; therefore, if the prisoner obstinately and contemptuously refuses to hold up his hand, but confesses he is the person named, it is fully sufficient. Then the indictment is to be read to him distinctly in the English tongue, * * * that he may fully understand his charge. After which it is to be demanded of him whether he be guilty of the crime of which he stands indicted, or not guilty."

2 Bl., book 4, side pages 322, 323; 2 Hale's P. C. 215,. 217, 218; *People* v. *Frost,* 5 Park. (N. Y.) Cr. R. 52.

Our own supreme court have only in one or two instances. had occasion to consider arraignment in any of its incidents. or relations to trials.    In *Hendrick* v. *The State,* which was a misdemeanor, and tried before the adoption of our Codes, the defendant was arraigned and pleaded not guilty.    The court say :  " The principal office of the arraignment is to fix the personal identity of the accused.    Having been arraigned, and pleaded to the indictment, there was no necessity of other proof of his identity."    6 Texas, 341.

In *Caldwell* v. *The State,* where the objection was the omission or neglect of the court to have the defendant arraigned before the change of venue, as is provided for in Article 2997, Paschal's Digest—the defendant having been arraigned before trial in the county to which the venue was changed—the court held that the omission or neglect of the court in the first instance was not such error as would be good on motion for new trial, or motion in arrest.    41 Texas, 92.

In *Wilcox* v. *The State* the court simply remark, in passing, that " even in a capital case the defendant could not be heard (after arraignment) in denial of his true name having been set forth in the indictment.    31 Texas, 586.

It is to be kept in mind that in this case now under consideration the record nowhere shows that defendant was ever arraigned, or that he ever pleaded to the indictment,. or that he was ever called upon to plead, and refused to do so, and that thereupon the plea of not guilty was entered for him by the court, under the authority of Article 2942,. Paschal's Digest.    On the contrary, the record shows what pleas and objections were made and interposed by the defendant—as, for instance, his pleas to the jurisdiction, and his objections to being placed on trial to answer the indictment in this case ; and, if presumptions are to be indulged, the

particularity with which these other matters are set forth would indicate the total absence of any pleas or procedure of this character. But we cannot indulge in any presumptions in favor of that having been done which should have been done in such cases.

It is true that the courts of some of the states have held that in cases not capital no actual arraignment or plea was an essential incident to the trial where their statute law did not limit these formalities, as does ours, to capital felonies. *Fernandez and White* v. *The State*, 7 Ala. 511; *Malehan* v. *The State*, 30 Ind. 266; *Newsom* v. *The State*, 2 Ga. 60; *Jacobs* v. *The Commonwealth*, 5 Serg. & Rawle, 314. In this last-cited case the court take occasion to say: "But although we will not reverse for want of an entry of the arraignment on the record, except in cases that are capital according to our acceptation of the term, we still are far from sanctioning its omission in practice in any case of felony." See, also, *Grigg* v. *The People*, 31 Mich. 471.

We have had no opportunity of examining *Schriner* v. *The People*, 33 Ill. 276, and *The State* v. *Schoenwald*, 31 Mo. 147, cited by Assistant Attorney General Peeler in his very able brief in this case. As far as we have had access to the authorities we have found not a single capital case wherein it was held that the formalities of arraignment and plea could both be dispensed with; on the contrary, there are authorities asserting the doctrine that, even if he were so disposed, the defendant could not waive or agree to dispense with both these requisites, and be bound by such agreement. 1 Bishop on Cr. Pro., sec. 125; *Douglass* v. *The State*, 3 Wis. 820. See, also, *Wilson* v. *The State*, 42 Miss. 639; *The State* v. *Lartique*, 6 La. An. 404; *The State* v. *Price*, 6 La. An. 694; *Eiseman* v. *The State*, 49 Ind. 520, and *Grigg* v. *The People*, 31 Mich. 471.

We think the true rule is that stated by the supreme court of California, in the case of *The People* v. *Corbett.*

They say : " If the defendant had at any time anterior to the trial pleaded not guilty, the defects in the arraignment, or rather the omission to arraign, might have been cured on the ground of waiver; but neither the motion of the defendant for a separate trial, nor the introduction of witnesses by him, nor the fact that the case was argued on his behalf to the jury—nor did all of them combined—cure the want of a plea. There was not only no arraignment, but, over and beyond that, there was no issue for the jury to try. Not only did the defendant not plead, but, inasmuch as the statute opportunity for pleading was never extended to him, he never was under any obligation to plead. A verdict in a criminal cause where there has been neither arraignment nor plea is a nullity, and no valid judgment can be rendered thereon." 28 Cal. 328 ; see, also, *The People* v. *Lightner*, 40 Cal. 226.

4th. As to the separation of the jury and the action of the court relative thereto, which is another ground complained of by defendant in his motion for a new trial, the facts are in substance these : On Thursday the jury were selected, impaneled, and sworn ; Friday and Saturday were consumed in the investigation of the case. Each night the jury, in charge of an officer, were taken to a hotel in the city of McKinney, and there permitted to sleep. About 3 o'clock, A. M., on Sunday, whilst the jury were at the hotel, a fire broke out in the city, which consumed a number of buildings, and finally this hotel also took fire and was subsequently burned.

The jury, in getting out of the house, became separated from the officer and each other, and mingled with the crowd who were endeavoring to extinguish the fire, some of them assisting about the fire, and two of them went to their homes. They were thus separated for the space of about an hour, or an hour and a quarter, when they were gotten together again by the officer, before the fire was extin-

guished, and were kept together till court convened again on Monday morning, when they were placed in the box. The fact of the separation and the circumstances were brought to the attention of the court by the district attorney. The defendant, when asked by the court if he waived any objection on account of the separation of the jury, declined through his counsel to say anything. The court then had the jurors sworn upon their *voir dire*, and each one interrogated individually. They each and all deposed that no one had spoken to or in his presence with reference to the trial. The court then asked the district attorney and the defendant if they either desired to controvert or inquire into the answers of the jurors, or any of them. This they each declined to do, the defendant answering that he did not. The court then asked, "Has defendant any objection of any character to proceeding with this cause?" The defendant declined to answer, and also declined to waive anything that may be in his favor. The court then asked, "Does the defendant wish to inquire into the fact of the separation of the jury, and the extent thereof?" Defendant answered, "He does not at this time." The court then remarked that if the defendant objected to the continuance of the trial the objection would be sustained and the jury discharged. The defendant answered by saying that he waived no right, and declined to say whether he objected to proceeding or not. Whereupon the court ordered the trial to proceed.

Under such circumstances we can well imagine the embarrassment of the court. On the one hand it is expressly provided by our statute that "after a jury has been sworn and impaneled to try any case of felony they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the district attorney and the defendant, and in charge of an officer." Art. 3070, Pasc. Dig. And again: "The jury may be discharged, after the cause is submitted to them,

when they cannot agree and both parties consent to their discharge, or where they have been kept together for such a time as to render it altogether improbable they can agree; in this latter case the court, in its discretion, may discharge them." Pasc. Dig., Art. 3084; *Moseley* v. *The State*, 33 Texas, 671.

These are the only provisions of the statute relative to the discharge of a jury in a felony case, except where they are discharged, by operation of law, upon the adjournment of the court. Art. 3085. And under these provisions the only authority conferred upon the court to discharge a jury *ex mero motu*, and without consent, is that of cases where they have failed to agree.

On the other hand, had the court in this instance, of its own motion, assumed the authority to discharge the jury on account of the separation, or had the district attorney, with permission of the court, entered a *nolle prosequi*, such action might have been tantamount to, and have operated as, a bar to any further prosecution and as a final acquittal of the defendant, under the constitutional provision that "no person, for the same offense, shall twice be put in jeopardy of life." Sec. 12, Art. 1, of the Const. of 1869, and 5th Amend. to the Const. of the United States. There is great conflict of authorities upon this question. Those in favor of the proposition will be found in 1 Whart. Am. Cr. Law, sec. 573, *et seq.*; 1 Bishop on Cr. Law, sec. 855–863; 7 Am. Rep. 611, and *Newsom* v. *The State*, 2 Ga. 60; and those *contra* may be found cited in Paschal's Digest of Decisions, sec. 15926, and see, also, *The People* v. *Reagle*, 60 N. Y. (Barb.) 527. Without deciding, or feeling called upon to decide, this question, we only refer to it with the view of presenting the embarrassing nature of the circumstances under which the court was required to act.

Nor could the defendant be required to say whether he

18

waived his rights in the premises. He was on trial for his life, and it was his privilege and right, if he so desired, by declining to say anything or refusing to waive any right, to place himself in an attitude to take advantage of any error committed in the proceedings, calculated in any degree to prejudice his case. 1 Bishop on Cr. Pro., sec. 998. The court seems to have acted with great delicacy and consideration under the circumstances; but, having proceeded with the trial to the conviction of the defendant, it is for us to determine whether or not, on account of this separation of the jury, the court should have granted or refused him a new trial on his motion.

In the statute laying down and defining the only grounds in felony cases whereon new trials will be granted, we find it provided as one of the grounds, " where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial; and it shall be competent to prove such misconduct by the voluntary affidavit of a juror, and a verdict may in like manner be sustained by such affidavit." Subdiv. 8 of Art. 3137, Pasc. Dig. Separation of the jury has generally been considered a species of " misconduct," and in such cases the practice has to some extent been adopted in this state of permitting the testimony of jurors to be taken and weighed in determining the existence and extent, or the non-existence, of such misconduct.

One of the earliest cases in which the separation of the jury was discussed by our supreme court was the case of *Jones & Jones* v. *The State*, and in that case Lipscomb, J., delivering the opinion of the court, says: " Where the jury, or any number of them, have separated without the consent of the court, we believe the following rules, laid down by Judge Green in *Hines* v. *The State*, 8 Humph. 597, are correct and should be observed: 1st, that the fact of separation having been established by the prisoner, the

possibility that the juror has been tampered with, and received other impressions than those derived from the testimony in court, exists, and *prima facie* the verdict is vicious; but, 2d, this separation may be explained by the prosecution showing that the juror had no communication with other persons, or that such communication was upon subjects foreign to the trial, and that in fact no impressions other than those drawn from the testimony were made upon his mind; but, 3d, in the absence of such explanation, the mere fact of separation is sufficient ground for new trial." 13 Texas, 168.

In other subsequent decisions it would seem that our courts have held substantially that it must be made to appear that such separation did have an effect upon the fairness of the trial, or else the verdict will not be disturbed. *The State* v. *Nelson*, 32 Texas, 71; *Jenkins* v. *The State*, 41 Texas, 128; *Wakefield* v. *The State*, 41 Texas, 556. We will remark, however, that in each of these cases it appears that the separation was that of one or more individual members of the jury, and under such circumstances as rendered it improbable, if not impossible, that, independent of their own evidence, they could have been tampered with. In other cases, where the separation has been of a more serious character, it has been held fatal. *Walker & Black* v. *The State*, 38 Texas, 367; *Brown* v. *The State*, 38 Texas, 483.

As a general rule, applicable alike to all kinds of irregularities in the conduct of the jury, we copy and approve as correct the following extract from the opinion of Shaw, C. J., in *The Commonwealth* v. *Roby*, 12 Pick. 496: "The result of the authorities is that when there is an irregularity which may affect the impartiality of the proceedings—as where meat and other refreshments have been furnished by a party, or where the jury have been exposed to the effect of such influences, or have had communications not author-

ized—there, inasmuch as there can be no certainty that the verdict has not been improperly influenced, the proper and appropriate mode of correction or relief is by undoing what is thus improperly, and may have been corruptly, done ; or when the irregularity is in doing that which may disqualify the jurors for proper deliberation and exercise of their reason and judgment—as where ardent spirits are introduced—then it would be proper to set aside the verdict, because no reliance can be placed upon its purity and correctness.   But when the irregularity consists in doing that which does not, and cannot, affect the impartiality of the jury, or disqualify them from exercising the powers of reason and judgment—as where the act done is contrary to the ordinary forms and to the duties which jurors owe to the public—the mode of correcting the irregularity is by animadversion upon the conduct of the jurors or of the officers, but such irregularity has no tendency to impair the respect due to such verdict.''   See the authorities there cited, and the case of *Davis* v. *The State*, 35 Ind. 406, where the above is also cited with approval.   See, also, *The State* v. *Prescott*, 7 N. H. 287.

Another general rule which we think may be safely deduced from the weight of authorities upon this subject is that a separation of the jury, before bringing in their verdict in a capital case, does not, *per se*, render the verdict void, but such verdict will be set aside, or not, according to circumstances.   *The State* v. *Miller*, 1 Dev. & B. 500; *Wyatt* v. *The State*, 1 Blackf. 257; *People* v. *Douglass*, 4 Cow. 26 ; *Commonwealth* v. *McCaul*, 1 Va. Cas. 271; *Parsons* v. *Huff*, 38 Me. 137; *The State* v. *Hester*, 2 Jones (N. C.), 83 ; *Edrington* v. *Kiger*, 4 Texas, 89 ; *The State* v. *Barton*, 19 Mo. 227; *The State* v. *Harlow*, 21 Mo. 446; *The State* v. *Igo*, 21 Mo. 459; *Rex* v. *Kinman*, 2 B. & A. 462 ; *The State* v. *O'Brien*, 7 R. I. 336 ; 1 Bishop on Cr. Pro., sec. 998, note 4.

Applying the law to the facts of this case, and we are constrained to believe that the separation of the jury, under the circumstances, was of a character to call most loudly for the exercise of the judicial discretion in favor of a new trial. In a case involving the momentous issues of life and death there should be no room for doubt as to the purity and integrity of the verdict. It should be above suspicion, and command entire confidence. In this particular case the separation was, no doubt, unavoidable in the first instance, as the jury, impelled by the instinct of self-preservation, fled from the burning hotel. Mingling with the excited crowd, intent upon the work of saving a burning city and their own property and homes, we can well imagine how, in the contagion of the moment, they should forget everything else and surrender themselves up solely to the dictates of a common humanity. Doubtless no blame can legitimately be attached to their conduct in such extraordinary surroundings. Still, the opportunities for improper influences, even if not improved, were so great that they will be presumed by the law in favor of human life and liberty.

The charge of the court presented the law applicable to the facts in a clear and forcible manner, and was as favorable to the defendant as those facts warranted. Nor do we see any error in the refusal of the court to give to the jury the instructions asked by the defendant.

But, for the reasons above set forth, the case is reversed, because the record does not show that the defendant was ever arraigned, or that he ever pleaded to the indictment, and because the court should have granted a new trial in view of the facts and circumstances connected with the separation of the jury.

*Reversed and remanded.*