

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00127-CR

DANIEL UBALLE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2012-435,358, Honorable Jim Bob Darnell, Presiding

May 6, 2014

## OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant Daniel Uballe was convicted of possession with intent to deliver a controlled substance (cocaine) and sentenced to sixty years confinement. On appeal, he contends the trial court erred in 1) failing to suppress the results of a search of his vehicle under both the federal and state constitutions, 2) failing to submit an article 38.23 instruction, 3) refusing to grant a hearing on purported jury misconduct, 4) refusing to grant a hearing on his motion for new trial, and 5) refusing to grant a new trial based on jury misconduct. We affirm the judgment.

*Background*

On April 27, 2012, Lieutenant Eric Williams of the Texas Tech Police Department observed a pickup truck pull up beside him at a traffic light on Indiana Avenue. He saw that the driver (appellant) was not wearing a seat belt. When the light changed, he followed appellant and activated his lights. Appellant did not immediately pull over, and Williams observed that appellant was looking down to his right and the truck was weaving. The truck eventually stopped on Texas Tech Parkway. Williams testified that appellant still appeared to be doing something to his right side.

Upon approaching appellant, Williams observed that appellant appeared very nervous. When the officer asked for appellant's driver's license, appellant informed the officer he did not have one. Williams had appellant get out of his vehicle and saw that appellant wore an ankle monitor. Williams also saw a pink and white make-up case sitting on the front seat beside where appellant had been sitting. The case was partially open, and a clear piece of plastic was sticking out. Williams asked to search appellant, and consent was given. Appellant carried a large amount of cash mostly in $20 bills and explained that he had just gotten paid and received his tax return. When dispatch ran appellant's license tag, the officer learned that appellant's driver's license was suspended. He also learned that appellant had a lengthy criminal history including a drug offense. Williams then asked to search the truck, but appellant refused consent and stated that his girlfriend's possessions were in the truck.

At that point, the officer arrested appellant for driving without a valid license and for a seat belt violation. Appellant was handcuffed and placed in a police vehicle. Appellant's truck was to be impounded because no other licensed driver was present to take possession of it.

Williams commenced an inventory of the vehicle prior to impoundment and discovered what appeared to be crack cocaine in a plastic bag in the pink and white make-up case next to the driver's seat. A digital scale was also found in the driver's side door compartment as well as two credit cards in a name other than appellant's.

*Issues 1 & 2—Search of the Vehicle*

In his first two issues, appellant argues that the inventory of his vehicle was merely a ruse to conduct a contraband search in violation of the federal and state constitutions and that the Texas Constitution affords greater protection from unreasonable searches than does the Constitution of the United States. We overrule the issues.

The pertinent standard of review is discussed in *Fienen v.* State, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012) and *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). It requires us to defer to the trial court's determination of historical facts and review *de novo* questions of law. *Guzman v. State*, 955 S.W.2d at 89.

Next, we note that appellant does not question the legitimacy of his detention and arrest. Given that, the police were authorized to conduct an inventory search of the vehicle if impoundment was the only reasonable alternative to protect the vehicle. *Daniels v. State,* 600 S.W.2d 813, 814 (Tex. Crim. App. 1980); *St. Clair v. State*, 338 S.W.3d 722, 724 (Tex. App.—Amarillo 2011, no pet.). Furthermore, they are not required to investigate the existence of alternatives in the absence of some objectively demonstrable evidence that alternatives did, in fact, exist. *St. Clair v. State*, 338 S.W.3d at 724; *Wooldridge v. State*, No. 05-05-00263, 2006 Tex. App. LEXIS 8918, at *5-6 (Tex. App.—Dallas October 17, 2006, no pet.) (not designated for publication).

Here, appellant does not argue that there were alternatives to impounding the vehicle. So, impoundment and the performance of an inventory search were permissible. Nonetheless, the inventory had to be conducted according to standardized criteria or established routine. *Camp v. State*, No. 07-11-00481-CR, 2013 Tex. App. LEXIS 15352, at *6 (Tex. App.—Amarillo December 19, 2013, pet. ref'd) (not designated for publication). Furthermore, when the inventory includes the opening of closed containers, as it did here, it must be shown that such act also was undertaken in accordance with standardized police procedure or established routine, while being in good faith and not for the sole purpose of investigation. *Id.* As we noted in *Camp*,

> Our view that standardized criteria . . . or established routine . . . must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime[.]'

*Id.*, *quoting Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

Here, evidence appears of record that Texas Tech enacted a written policy applicable to inventory searches. It allowed same when, among other things, the operator was arrested and directed "personnel . . . [to] conduct a *complete* written inventory of a vehicle to be impounded." (Emphasis added). "Officers who impound a vehicle" were also directed to "complete the Vehicle Inventory form as completely as possible" and "[i]f contraband is found" to inventory it "on the case report." To that evidence of a written policy, we add the testimony of one of the officers conducting the inventory search; he disclosed that their policy was to inventory "everything" and that they check or search "everything," including glove compartments, consoles, and under

4

and behind the seats. He further explained that "[t]he purpose of . . . doing the inventory [of appellant's car] was to get the car off the road. We were in a busy intersection right there at Tech Parkway and 4th Street. There's a lot of traffic, a lot of ambulances . . . in that area . . . . We needed to get it inventoried and get it towed out."

Also of record is evidence that two officers conducted the inventory; one began and another finished it. Additionally, not all items discovered were memorialized on the inventory sheet, such as individual items of make-up found in a make-up kit.[1] As the officer explained: "It was as complete an inventory as possible at that time. Could we have listed all the makeup out individually? I guess we could have. We could have listed that he had floor mats in the pickup, too . . . ." He further denied any intent to conduct a search simply to discover drugs, despite having seen a plastic baggie protruding from the make-up kit.

Given the 1) location of the vehicle, 2) traffic, 3) evidence of a policy directing officers to perform a complete inventory and check "everything," 4) evidence that in applying the policy, the officers check closed compartments such as glove boxes, consoles, and in this case, a make-up case, 5) evidence of a written inventory of the vehicle's contents, 6) officer's denial of any motive to simply search for drugs, and 7) appellant's arrest, we cannot say that under the totality of the circumstances, the trial court's refusal to deny the motion to suppress fell outside the scope of reasonable disagreement. There exists of record sufficient evidence to support the conclusion that the impoundment of the vehicle was not simply a ruse to search it for contraband. *See St. Clair v. State*, 338 S.W.3d at 724-25 (finding enough evidence that a proper inventory search was conducted even though the officer did not itemize the contents of

---

[1] The make-up kit itself was noted on the inventory form, though.

the vehicle when he testified that the only items of value found were a purse and $88 in it, the items were included in his report, and he testified he searched in accordance with the policy); *see also Richards v. State*, 150 S.W.3d 762, 770 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (wherein the search was held legal despite the absence of a written policy regulating the search of closed containers because the officer testified that he was trained to inventory any containers to which he had access).

As for appellant's suggestion that the Texas Constitution should be interpreted, per *Autran v. State*, 887 S.W.2d 31 (Tex. Crim. App. 1994), as providing greater protection against unreasonable searches and seizures than the United States Constitution, we rejected the argument long ago in *Starnes v. State*, No. 07-03-00378-CR, 2004 Tex. App. LEXIS 10263, at *4-5 (Tex. App.—Amarillo November 16, 2004, pet. ref'd) (not designated for publication); *see also Clement v. State*, No. 07-04-0381-CR, 2005 Tex. App. LEXIS 1190, at *3 (Tex. App.—Amarillo January 25, 2005, no pet.) (not designated for publication) (holding that we are not bound by *Autran*).

*Issue 3—Article 38.23 Instruction*

Next, appellant argues that a fact issue was raised with respect to the legality of the search of his vehicle which entitled him to an instruction under article 38.23 of the Code of Criminal Procedure.   Though we find error, we find no harm and overrule the issue.

Article 38.23 provides that "where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained."  TEX. CODE CRIM. PROC.

6

ANN. art. 38.23(a) (West 2005); *Bible v. State,* No. 07-11-00192-CR, 2013 Tex. App. LEXIS 4455, at *10 (Tex. App.—Amarillo April 8, 2013, no pet.) (not designated for publication) (stating that a "trial court must give an article 38.23 instruction if the evidence raises a disputed fact issue about whether evidence was lawfully obtained"). The requirement that "the legal evidence raises an issue" is met when affirmative evidence creates a disputed issue of material fact. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). That is, a defendant is entitled to the submission if 1) the evidence heard by the jury raises a fact issue, 2) the evidence on that fact is affirmatively contested, and 3) that contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510; *Bible v. State*, 2013 Tex. App. 4455, at *10. However, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Bible v. State,* 2013 Tex. App. LEXIS 4455, at *10. Finally, an issue of material fact about whether evidence was legally obtained may be raised from any source, and the evidence may be strong, weak, contradicted, unimpeached, or unbelievable. *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004).

Here, appellant asserts that the material issue of fact concerns the intent of the officer who initially stopped the vehicle, arrested appellant, decided to impound the vehicle, and commenced the inventory search. While that officer denied any intent to conduct an inventory search merely to look for contraband, his actions purportedly revealed otherwise, according to appellant.

Intent normally is an issue of fact.[2]  *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003).   And, as we have often said, it can be illustrated through circumstantial evidence, such as the actor's conduct.  *Girdy v. State*, 175 S.W.3d 877, 880 (Tex. App.—Amarillo 2005), *aff'd,* 213 S.W.3d 315 (Tex. Crim. App. 2006).  So, a fact finder is not obligated to accept only the words used by a witness in describing his *mens rea*; it may also look at his acts to assess what he was thinking.  This observation is of import here due to the law governing inventory searches; again, they may occur if conducted in good faith and per standardized policy or routine.  *Camp v. State,* 2013 Tex. App. LEXIS 15352, at *6; *see also Colorado v. Bertine*, 479 U.S. 367, 374, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (stating that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment . . . .").  We also add that the matter of good faith tends to be subjective and personal rather than objective.  *Corbin v. State*, 85 S.W.3d 272, 280 n.5 (Tex. Crim. App. 2002).

With the foregoing in mind, we note that Officer Williams testified to seeing appellant engage in furtive gestures before the stop, characterized appellant as more nervous than most people being stopped by an officer, asked why he was so nervous and whether there was something in the vehicle that he (the officer) needed to know

---

[2] The State posits that "'the intent and belief of the actors' and the 'purpose of the officers' were legal determinations," as opposed to issues of fact subject to resolution by a jury, "because the intent and belief of the actors and their purpose in searching the vehicle can only be considered as part of an overall determination of whether the inventory was valid or not—which is a determination for a court to make rather than a factual dispute for a jury to resolve."  Yet, it cited no legal authority supporting the proposition, and this somewhat hampers our understanding of what it is attempting to say.  We would agree that if the facts purporting to evince the requisite good faith are uncontroverted (*e.g.* the occurrence of indicia X, Y, and Z is uncontroverted), then whether their quantum equates to good faith is a question of law.  *See Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).  If the underlying facts are controverted (*e.g.* witnesses provide evidence indicating X, Y, and Z may or may not have occurred), then the existence of the facts present questions of fact for a jury to decide under article 38.23.  That the resolution of the factual dispute concerns the validity of the stop or search does not make the matter an issue of law.  If the State is suggesting otherwise, then it is wrong.  Indeed, such an interpretation of the law would render article 38.23 meaningless.

about, had seen a make-up case from which protruded part of a plastic bag, described the make-up case as being in the area towards which appellant's furtive gestures had been directed, discovered large sums of money on appellant's person, and solicited but was denied permission to search the vehicle. Thereafter, the officer decided to arrest appellant, impound the vehicle, and conduct an inventory search prior to the vehicle's actual removal. In performing that inventory search, the first thing the officer went to (after approaching the vehicle, of course) was the make-up case. Once the case was opened and the potential contraband discovered, the very same officer confronted appellant in an accusatory manner with the discovery, despite the alleged vehicular congestion that mandated the vehicle's removal from the scene with due haste. From these indicia, one could reasonably infer that the officer not only wanted to search but also contrived a means of searching the truck for contraband.

Indeed, the presence of furtive gestures, the possession of large sums of money, and the appearance of nervousness are regularly cited by officers as indicia suggesting that something odd or potentially criminal is afoot and that a limited search and seizure may be justified. It would seem rather specious to suggest that those circumstances somehow lose significance when the officer decides to conduct an inventory search. And, Officer Williams having asked if appellant had anything in the truck that should be revealed and sought permission to search it hardly supports the notion that the officer did not want to look for contraband.

Unless the element of good faith is to be excised from constitutional jurisprudence governing the search at bar, a material issue of fact involving the officer's good faith existed thereby triggering the application of article 38.23. In short, the trial court erred in denying appellant's request for such an instruction.

Yet, our inquiry continues. Having found error, we must decide if it was harmful. *Bible v. State,* 2013 Tex. App. LEXIS at \*9-10; *accord Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (so stating); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (so stating). Since the instruction at issue was requested here, the presence of harm depends on whether it was "calculated to injure the rights of the defendant" or whether "some harm" appears of record. *Bible v. State,* 2013 Tex. App. LEXIS 4455, at \*9-10; *Almanza v. State*, 686 S.W.2d at 171. And, that is assessed by examining 1) the entire jury charge, 2) the state of the evidence, including the contested issues and weight of probative evidence, 3) the argument of counsel, and (4) any other relevant information contained in the record of the trial as a whole. *Bible v. State*, 2013 Tex. App. LEXIS 4455, at \*9-10.

No one questions the legitimacy of appellant's arrest. Furthermore, he was the sole driver of the vehicle, and nothing of record indicates that anyone else was readily available to take possession of it. That it was stopped on a street containing extensive vehicular traffic also appears rather clear. So, the need to impound and remove it from the scene can hardly be questioned. To that, we add the existence of a written policy 1) authorizing the vehicle's impoundment given appellant's arrest and the vehicle's creation of a potential traffic hazard and 2) requiring a "complete inventory of the vehicle to be impounded." Williams and the other officers were within their authority to search the truck.

That the make-up kit appeared on the front seat of the truck and was of the type in which one may place valuable items further evinced a need to open and peruse its contents. And, again, the opening of closed containers was an act within the scope of the written policy since a complete inventory had to be taken.

10

These circumstances all but legitimize the inventory search conducted by Williams and his fellow officers. Thus, denying the jury opportunity to assess Williams' good faith was harmless error.

*Issues 4 & 5—Jury Misconduct*

Appellant's last two issues arise from a juror leaving the room in which the jury was sequestered while deliberating punishment. The incident was described by appellant's trial counsel as follows:

> . . . based on the immediate past events, I guess probably 10 minutes ago -- and for the record one of the jurors exited the jury room separating herself from the rest of the jurors in a somewhat agitated state. I believe that she indicated something to the -- along the lines of if she went back in the jury room that it could result in her going to jail. I believe that would indicate that there is an impasse in the jury deliberations and would suggest that the Court call the jury back into the jury room to inquire whether they have reached an impasse or not, so that deliberations can continue, if possible, without the threat or without the possibility that one of the jurors is being bullied. I think one of the other comments she made was something along the lines that she would not be bullied. And we believe that that is indicative from her explosion from the courtroom, and her comments that potential jury misconduct is afoot, and that she is not being allowed to exercise her own individual verdict.

A like description of the event appears in the affidavit accompanying appellant's motion for new trial. The court responded to defense counsel's request and comments with the following: "Well, the Court gave them a recess and they're back in the jury room deliberating. Unless something happens, the Court is not going to interfere with their deliberations at this point in time."

Before us, appellant argues that "[t]he trial court erred both in denying the immediate hearing on the misconduct and on denying a hearing on the portion of the

motion for new trial based on the evidence to be elicited from that juror about being bullied in the jury room." We overrule the issue.

The decision to deny a motion for new trial is reviewed under the standard of abused discretion, *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2009), as is the decision to further instruct jurors once they have retired to deliberate. *See Wilbon v. State*, 961 S.W.2d 9, 11 (Tex. App.—Amarillo 1996, no pet.). Thus, we can reverse those decisions only if they fell outside the zone of reasonable disagreement.

Assuming *arguendo* that the trial court erred in deciding to forego investigation and instead return the jurors to the jury room after a brief recess, we find it harmless. Unlike the situation in the sole authority cited by appellant to support his contention, *i.e. Early v. State*, 1 Tex. Ct. App. 248 (1876), the circumstances before us do not involve a juror intermingling with non-jurors upon leaving the room without permission. Nor does the record illustrate that tempers somehow hampered their ability to reach a verdict. Indeed, after the event and a short recess, the jurors returned to the task of deliberating and reached a unanimous verdict on punishment. Each juror was polled, and each affirmed the decision. So, we cannot say that the decision to allow tempers to cool rather than to conduct a hearing to query jurors about their deliberations and demeanor while deliberating affected the outcome in any impermissible way.

Next, a hearing upon a motion for new trial is warranted if 1) the matters raised in the motion and accompanying affidavit are not determinable from the record, and 2) the motion and affidavit establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). Here, neither the motion nor accompanying affidavit filed by appellant raised any matter outside the previously existing record. In that circumstance, it was not error

12

to deny a hearing on the motion.  *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009) (holding that a hearing is not required when the matters raised in the motion for new trial are subject to determination from the record).

As for the allegation about denying appellant a new trial due to jury misconduct, the potential misconduct is premised upon by a juror's exit from the jury room and "agitated" outburst about supposed bullying.  Yet, Rule of Evidence 606(b) bars that juror and any other one from testifying about  "any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment."  TEX. R. EVID. 606(b).  So, none of the jurors can be queried about any matter or exchange that may have given rise to the emotional outburst or alleged misconduct.  And, we cannot say that a decision to forego negating a verdict by granting a new trial upon speculation that some misconduct occurred falls outside the zone of reasonable disagreement.

Accordingly, appellant's issues are overruled and the judgment is affirmed.


Brian Quinn
Chief Justice


Publish.

13