

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00379-CR

_____

MARC ANTHONY RAYOS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 371st District Court
Tarrant County, Texas
Trial Court No. 1524482D

---

Before Sudderth, C.J.; Gabriel and Kerr, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION ON REHEARING

Appellant Mark Anthony Rayos filed a motion for rehearing of our September 5 memorandum opinion and judgment. We deny the motion but withdraw our prior opinion and substitute the following in its place. With the exception of two footnotes added to address Appellant's argument for rehearing and a typographical correction, our opinion remains otherwise unchanged.

In two issues, Appellant appeals his conviction for possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code Ann. § 481.112. We affirm.

## Background

Appellant appeals the trial court's denial of his motion to suppress evidence of drugs discovered when officers searched his vehicle after arresting him for public intoxication. The facts, as testified to by Euless Police Department Officer Shawn Buschee and Officer Patrick Cunningham and as depicted in the recording of a body camera worn by Officer Buschee's partner, Officer Mitchell, are undisputed.

### I. The arrest

In the early hours of November 11, 2017, a concerned citizen called 911 to report a vehicle parked at a RaceTrac gas station with two flat tires and body damage and an apparently impaired driver possibly in need of medical attention. When Officer Buschee and Officer Mitchell arrived, they observed Appellant standing outside of a pickup truck with body damage and two flat tires on the passenger side.

2

Officer Buschee testified that he immediately noticed that Appellant's speech was slurred, he was "somewhat unsteady on his feet," and his breath smelled of alcohol.

Appellant admitted to Officer Mitchell that he had had about ten drinks that evening. After administering a horizontal gaze nystagmus (HGN) test and observing all six possible clues of intoxication, Officer Buschee placed Appellant under arrest for public intoxication. At the time of arrest, Office Buschee explained to Appellant that he would probably spend about six hours in jail before being released later that morning.

## II. The vehicle search

On the video, Appellant told Officer Mitchell that he was waiting for his wife[1] to pick him up. When the officers asked if he needed anything out of the truck—like his cell phone—Appellant responded, "No. My wife has it." When Officer Mitchell asked how Appellant called his wife to come pick him up at the RaceTrac if his wife had the phone, Appellant responded that he had called his wife before he left his friend's house earlier and said he was on his way home but acknowledged that she could not know that he had damaged the truck and was now at the RaceTrac. After they frisked Appellant and before they moved him to the patrol car, Officer Buschee pointed out that the truck was damaged, to which Appellant responded, "Yeah, it's

---

[1]Appellant initially referred to a "girlfriend" but later referred to his "wife." From the context, it appears he was referring to one person. For simplicity, we will refer to her as his wife.

3

f***** up," and admitted that he did not have two spare tires to change both flats. When Officer Buschee asked, "Are the keys in it, is it locked up?" Appellant answered, "No." When Officer Buschee asked where the keys were, Appellant responded that he did not know and did not have them on him. Officer Buschee directed Officer Mitchell to look in the truck for the keys, and upon opening the truck door, Officer Mitchell smelled an odor of marijuana. He then found a scale, and inside the truck console, he found a baggie of cocaine, a jar full of marijuana, and bundles of cash.

At the hearing, Officer Buschee testified that he directed Officer Mitchell to get the keys because the vehicle was going to be impounded and inventoried pursuant to EPD policy allowing the impoundment of inoperable vehicles or if the driver is placed under arrest. The State introduced evidence of EPD policy allowing police to impound a vehicle when a driver is arrested or if "a vehicle is rendered inoperable due to an accident."

## III. The arguments and ruling

At the hearing, Appellant argued that the officers did not have probable cause to search the vehicle and that the EPD impoundment policy was improper because it allowed the officers unlimited discretion to search and inventory a vehicle without probable cause. The trial court disagreed, denied the motion to suppress, and found that "the vehicle was subject to discretionary impoundment based on the policies that have been introduced." This appeal followed.

4

**Discussion**

Appellant brings two issues on appeal.[2] In his first, he argues that the EPD impoundment and inventory policy cannot justify Officer Mitchell's search of the truck because the policy allows the officers "unlimited discretion." In his second, he challenges the inventory of the truck on the basis that it was the fruit of an unlawful seizure of the truck and on the basis that the officers allegedly did not follow EPD inventory-search protocol.

## I. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Stated another way, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *Wiede*,

---

[2]Appellant organized his argument in two issues but listed five issues in his "Issues Presented." Because we have determined that his list of five issues is merely listing subissues of his two overall issues, we have organized this opinion to follow the organization of the brief.

214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819. Even if the trial court gave the wrong reason for its ruling, we must uphold the ruling if it is both supported by the record and correct under any applicable legal theory. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003).

## II. The impoundment

To be lawful, a decision to impound a vehicle must be reasonable under the Fourth Amendment. *Roberts v. State*, 444 S.W.3d 770, 775 (Tex. App.—Fort Worth 2014, pet. ref'd). The State bears the burden to prove a lawful impoundment. *Id.* Whether an impoundment is reasonable is a question of law that we review de novo, measuring reasonableness by examining the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421 (1996); *see also Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). In the process we must balance the public interest

6

and the individual's right to be free from arbitrary detentions and intrusions. *Kothe*, 152 S.W.3d at 63. Nevertheless, we have previously noted the significantly lower degree of privacy one should expect when it comes to his vehicle compared to his home or office and that vehicles are subject to pervasive and continuing governmental regulation and controls. *Roberts*, 444 S.W.3d at 774 (citing *South Dakota v. Opperman*, 428 U.S. 364, 367–68, 96 S. Ct. 3092, 3096 (1976)).

The court of criminal appeals has observed that there are many circumstances under which law enforcement may reasonably impound a vehicle, including (1) the driver's arrest when the arrest is reasonably connected to the vehicle; (2) statutory authorization; (3) vehicle abandonment or a vehicle that is hazardous and presents a danger to the public; (4) a reasonable belief that the vehicle is stolen; (5) vehicle removal from an accident scene; and (6) parking violations. *Id.* at 776 (citing *Benavides v. State*, 600 S.W.2d 809, 811 (Tex. Crim. App. [Panel Op.] 1980); and *Opperman*, 428 U.S. at 368–69, 96 S. Ct. at 3097) (explaining that in the interest of public safety and as part of a community caretaking function, vehicles are frequently taken into police custody for, among other things, vehicle accidents and other caretaking and traffic-control activities).

Appellant argues that the EPD impoundment policy cannot justify the impoundment of Appellant's truck because it leaves the decision to impound a vehicle to the "unfettered discretion" of police officers. This argument has been previously rejected, and we do not find Appellant's attempt to resurrect it convincing. *See*

7

*Colorado v. Bertine*, 479 U.S. 367, 375, 107 S. Ct. 738, 743 (1987) (rejecting argument that inventory search of van was unconstitutional "because departmental regulations gave the police discretion to choose between impounding the van and parking and locking it in a public parking place"). As the United States Supreme Court explained in *Bertine*, "Nothing . . . prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.*, 107 S. Ct. at 743.[3] In that case, the court declined to find a violation of the Fourth Amendment when "[t]here was no showing that the police chose to impound [the defendant]'s van in order to investigate suspected criminal activity." *Id.* at 376, 107 S. Ct. at 743.[4]

---

[3]In his motion for rehearing, Appellant argues that we have misconstrued *Bertine* and his argument regarding the EPD impoundment policy, and that the EPD policy is "deficient because it does not contain certain criteria *relating to the feas[i]bility and appropriateness of leaving the vehicle rather than impounding it*." But Appellant's interpretation of *Bertine* is wrong. The Supreme Court noted that the police policy at issue in *Bertine* allowed police officers the discretion to impound a vehicle or park and lock it in a public place, but the Supreme Court did not hold that police impoundment policies must include such a provision specifically requiring officers to evaluate the feasibility of parking the vehicle in a public place. *Id.* And we note that nothing in the EPD policy restricts the officer's discretion to consider the feasibility and appropriateness of leaving a vehicle.

[4]Appellant also relies heavily on *United States v. Duguay*, 93 F.3d 346 (7th Cir. 1996), to support his argument, but it is easily distinguishable from the case at hand. In *Duguay*, there was no written police policy or "well-honed department routine" regarding impoundment in effect at the time of the arrest, impoundment, and inventory search. *Id.* at 351. And the two arresting officers' explanations for impounding the defendant's car conflicted. *Id.* at 352.

In this case, the State provided evidence of EPD's written policy allowing officers to impound vehicles if the driver has been placed under arrest or if the driver's vehicle is rendered inoperable due to an accident. Officer Buschee testified that he impounded the truck because it was inoperable and Appellant was under arrest, and there is no evidence that Officer Buschee or Officer Mitchell acted in bad faith or used the policy as an excuse to search for additional evidence of a crime. *See id.* There is no dispute that Appellant's truck was inoperable—Appellant admitted as much at the scene. The trial court could have found that the officers were entitled to disbelieve Appellant's statement that his wife was on the way and therefore determined that nobody was en route to repair or retrieve the truck. *See Uballe v. State*, No. 07-13-00127-CR, 2014 WL 1829849, at *1–2 (Tex. App.—Amarillo May 6, 2014, no pet.) (mem. op., not designated for publication) (holding that impoundment was reasonable when appellant was arrested, no other driver was present to take possession of the vehicle, and appellant did not argue that there were alternatives to impounding the vehicle). Appellant asks us to conclude that the officers could have left the truck in the RaceTrac parking lot, but that is not the standard to be applied. We are required to view the evidence in the light most favorable to the trial court's implied factual findings, and here the trial court could have reasonably concluded that the RaceTrac was not a safe place to leave the unlocked[5] and damaged truck.[6] *See also*

_____

[5]In this respect, Appellant's argument as he reurges it in his motion for rehearing again misses the mark. Appellant insists that the EPD policy is deficient

9

*Bertine*, 479 U.S. at 374, 107 S. Ct. at 742 ("The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means.") (quoting *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S. Ct. 2605, 2610 (1983)).

We therefore overrule Appellant's arguments challenging the impoundment of his vehicle.

## III.  The inventory search

Appellant's challenge of the search of his pickup truck is three-fold: first, he argues that the inventory search was unlawful because the impoundment was

---

because it does not require police to evaluate the feasibility and appropriateness of leaving the vehicle, relying on *Bertine*.  Not only does he misinterpret *Bertine*, but if the EPD policy had a provision similar to that at issue in *Bertine* (allowing officers to choose between "parking *and locking*" a vehicle instead of impounding it), the result in this case would be the same.  *See Bertine*, 479 U.S. at 375, 107 S. Ct. at 743 (emphasis added).  Appellant's truck was unlocked and his keys were not on his person.  If the officers had decided to leave the truck, it is reasonable to expect that they would have opened the truck to find the keys in order to lock it, and in doing so, they would have smelled the marijuana.  *Cf. id.* at 372, 107 S. Ct. at 741 (recognizing deference accorded to "police caretaking procedures designed to secure and protect vehicles and their contents").

[6]We are not swayed by Appellant's reliance on decisions from other jurisdictions indicating that an impoundment is not reasonable when a defendant is arrested for a low-level offense that risks a short amount of time spent in custody.  *Cf. Roberts*, 444 S.W.3d at 775–76 (upholding impoundment after initial arrest for expired registration, lack of a valid driver's license, and no proof of financial responsibility); *Josey v. State*, 981 S.W.2d 831, 836 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (discussing impoundment after arrest for minor traffic violations).

unlawful. Because we have overruled his challenge to the impoundment of the vehicle, we overrule this argument.

In his second argument, Appellant challenges the search on the basis that the inventory search was not conducted pursuant to EPD policy requiring a written "vehicle inventory sheet." But Appellant did not present this argument to the trial court. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). We therefore overrule this portion of Appellant's argument.

Finally, Appellant argues that the search was not justified under the automobile exception because the officers did not have probable cause to search the vehicle until they had already opened the truck door. But we have already held that the impoundment of the vehicle was lawful, thereby permitting the officers to open the truck door to begin an inventory search. *See Moskey v. State*, 333 S.W.3d 696, 700 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("A police officer's inventory of the contents of an automobile is permissible under the Fourth Amendment if conducted pursuant to a lawful impoundment of the vehicle.") (citing *Opperman*, 428 U.S. at 375–76, 96 S. Ct. at 3100; *Benavides*, 600 S.W.2d at 810; and *Garza v. State*, 137 S.W.3d 878, 882 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd)). Once Officer Mitchell opened the truck door and smelled the odor of marijuana, he had probable cause to search the

11

vehicle under the automobile exception. *See Bogan v. State*, No. 02-15-00354-CR, 2016 WL 1163725, at *2 (Tex. App.—Fort Worth Mar. 24, 2016, pet. ref'd) (mem. op., not designated for publication) ("The smell of marijuana alone is sufficient to constitute probable cause to search a defendant's person, vehicle, or objects within the vehicle.") (citing *Small v. State*, 977 S.W.2d 771, 774–75 (Tex. App.—Fort Worth 1998, no pet.); *Luera v. State*, 561 S.W.2d 497, 498 (Tex. Crim. App. 1978)). We therefore overrule the remainder of Appellant's second issue.

## Conclusion

Having overruled Appellant's arguments, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 14, 2019